UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

THE OHIO WILLOW WOOD COMPANY,

   Plaintiff,         Case No. 2:04-cv-1223
                 JUDGE GREGORY L. FROST
   v.             Magistrate Judge Abel

ALPS SOUTH, LLC,

   Defendant.

**OPINION AND ORDER**

   This is a patent infringement case involving Plaintiff The Ohio Willow Wood Company ("OWW"), and Defendant ALPS South, LLC ("ALPS"). The matter before the Court is a request for this Court to construe language in the patent, as reexamined, pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996). The Court convened a *Markman* hearing for this purpose on February 2, 2012; also before the Court are the parties' various briefs on claim construction (ECF Nos. 138, 139, 141, 142, 143, 144) and the parties' Joint Disputed Claim Terms Chart (ECF No. 134-1). Upon full consideration of the matter, the Court issues this claim construction decision.

**I. Background**

   OWW is the owner of U.S. Patent No. 5,830,237 ("the '237 patent"). The company applied for the patent on March 5, 1996, and the patent issued on November 3, 1998. The '237 patent is titled "Gel and Cushioning Devices" and involves technology related to coverings for amputees employing a prosthesis. The relevant specification to the patent discloses a device in the form of a cushioned sock that fits over a residuum, or an amputation stump, so as to provide

a cushion between the residuum and the artificial limb. The sock has an open end for introduction of the residuum and a closed end opposite the open end. Additionally, the device features an inside-the-liner foamed or non-foamed gel coating, preferably comprised of a block copolymer and mineral oil compound, intended to ease discomfort and undesirable noise effects.

On December 27, 2004, OWW commenced this action, claiming that ALPS has infringed on the '237 patent. The parties disputed the language contained within several claims set forth in the '237 patent. Much of the disputed claims were linked to Claim 1, which at that time read:

> A tube sock-shaped covering for enclosing an amputation stump, said covering having an open end for introduction of said stump and a closed end opposite said open end, said covering comprising fabric in the shape of a tube sock coated on only one side thereof with a foamed or non-foamed gel composition comprising a block copolymer and mineral oil.

(Pl. *Markman* Hr'g Ex. 1, col. 13, lines 53-59.)

The parties disputed the meaning of the terms "tube sock shaped" and "coated on only one side" as used within the above-quoted Claim 1. Following a *Markman* hearing in January 2006, this Court issued its first claim construction opinion in this case on March 31, 2006. (ECF No. 50.) As pertinent to the claim construction issue here, the Court construed the term "coated on only one side" to mean "the presence of a layer of a substance on a surface of a fabric, with no observable penetration of the substance onto the opposing surface of the fabric." (*Id.* at 14.)

In defining the term in this manner, the Court rejected the claim construction proposed by ALPS. ALPS argued for a definition that precluded the gel composition from "impregnating" the fabric to any degree whatsoever. In other words, ALPS contended that Claim 1 was patentable *only* if the gel composition described in the claim was exclusively on a single surface of the fabric. Because Claim 1 used the limiting language "on only one side," ALPS reasoned

2

that any impregnation of the gel composition past the "surface" of the fabric would be inconsistent with the patent as issued. Finding ALPS's proposed construction unduly restrictive, this Court reasoned:

> [T]he core problem with ALPS' construction is that it imputes to the patent language a restriction on the method of manufacturing–impregnating–without necessity. The company argues that any construction that accepts impregnation would read out of the clause the restrictive "only." But the Court neither reads the patent language nor finds evidence that the patent language was intended to convey that "only" is wholly preclusive of impregnation here. Rather, the term only targets where the coating lies, as opposed to where portions of the gel might be present that are unobservable to the naked eye. In other words, "only" limits where the *coating* might be, but permits some of the substance *that does not constitute a complete coating* to be present elsewhere–such as into the fabric and imperceptibly to the other side of the fabric.

(*Id.* at 12 (footnote and internal citations omitted; emphasis in original).)

On October 5, 2006, Dr. Aldo Laghi requested an ex parte reexamination of the '237 patent by the United States Patent and Trademark Office ("PTO").[1] The PTO Examiner granted the reexamination request. (ECF No. 138-1; Pl. *Markman* Hr'g Ex. 9.)[2] In his decision granting the reexamination request, the Examiner found the references cited in Dr. Laghi's request to raise "a substantial new question of patentability "with respect to the '237 patent. (*Id.* at 7.) These references included advertisements for products from the Silipos Silosheath product line, which featured a tube sock-shaped "Single Socket Gel Liner" for amputees to wear over a residuum. (*See id.* at 5-8.) One of these references touted the Silosheath product as follows: "Impregnated with a patented gel, the Silosheath is an expandable nylon prosthetic sheath designed to disperse shock and vibration on the surface of the residual limb and eliminate skin

---

[1]Dr. Laghi is the President of ALPS. (*See Markman* Hr'g Tr. 137-38.)

[2]This Court stayed all proceedings in this case pending the reexamination. (ECF No. 80.)

3

breakdown." (Def. *Markman* Hr'g Ex. 8.) Thus, it was apparent during this reexamination that the Examiner viewed the Silipos Silosheath product line as a potential barrier to the continued validity of the '237 patent, at least as it related to Claim 1 and the various claims that are dependent upon Claim 1.

On March 7, 2008, the Examiner issued a Notice of Intent to Issue Ex Parte Reexamination Certificate ("NIIRC") addressing Claim 1 of the '237 Patent. (ECF No. 139-4; Pl. *Markman* Hr'g Ex. 4.) In his Statement of Reasons for Patentability and/or Confirmation, the Examiner expressly stated that "Claim 1 is patentable because the prior art fails to disclose or suggest a tube sock-shaped covering for enclosing an amputation stump, wherein the covering has a coating of a polymeric material ***residing on only an interior surface thereof***." (*Id.* at 2 (emphasis in original).)

The Examiner also referred specifically to the reexamination proceeding related to Patent No. 6,964,688 (the "'688 Patent"), during which the differences between the Plaintiff's rejected claims and Silipos Silosheath products were discussed. (*Id.* at 3.) During the reexamination proceeding for the '688 patent, the Examiner noted, the patent owner (OWW) presented a sample of a Silosheath product that "exhibited gel on its exterior." (*Id.*) Proposed amendments to Claim 1 of the '688 patent "were discussed in order to more clearly recite that the polymeric material is resident ***on only an interior surface of the fabric*** and does not bleed through to the outside." (*Id.* (emphasis in original).)

With respect to the reexamination of the '237 patent, the Examiner proposed amending Claim 1 as follows:

> A tube sock-shaped covering for enclosing an amputation stump, said covering having an open end for introduction of said stump and a closed end opposite said

4

> open end, said covering comprising fabric in the shape of a tube sock **and having a coating of polymeric material residing on only an interior surface** [coated on only one side] thereof, **said polymeric material comprising** [with] a foamed or non-foamed gel composition comprising a block copolymer and mineral oil.

(*Id.* at 2.)[3]

The Examiner indicated that this amendment "is seen to overcome the Silipos Silosheath references" that formed the basis for Dr. Laghi's reexamination request "since the claim limitation 'having a coating of polymeric material residing on only an interior surface therefore [*sic*, thereof]' is expressly defined by the [patent owner] to mean that the polymeric material is coated *on* the interior surface of the fabric with no polymeric material bleeding through the fabric to the exterior surface." (*Id.* at 4 (emphasis in original).) On September 2, 2008, the PTO issued its Ex Parte Reexamination Certificate, which deemed Claim 1 to be patentable as amended above. (Def. *Markman* Hr'g Ex. 2, col. 2, lines 6-13.)

Three days after the first reexamination certificate issued, Dr. Laghi requested a second reexamination of the '237 patent. Ultimately, the Examiner rejected Claims 1 to 23 of the '237 patent, a decision that OWW appealed to the Board of Patent Appeals and Interferences ("BPAI"). (ECF No. 139-7, at 2.)[4] After the BPAI reversed the Examiner's decision to reject Claims 1 to 23, the PTO issued an Ex Parte Reexamination Certificate on November 29, 2011. The reexamined patent recited Claim 1 as follows:

> A tube sock-shaped covering for enclosing an amputation stump, *said amputation stump being a residual limb*, said covering having an open end for introduction of

---

[3]Matter enclosed in brackets appeared in the patent, but was proposed to be deleted by the Examiner; matter printed in bold underline indicates additions proposed by the Examiner.

[4]Claim 1 was amended for purposes of appeal to the BPAI, but the terms "coating" and "residing on only an interior surface" remained undisturbed in the claim as amended for appeal.

5

> said [stump] *residual limb* and a closed end opposite said open end, said covering comprising fabric in the shape of a tube sock [and], *said fabric* having a coating of [polymeric material] *a foamed or non-foamed block copolymer and mineral oil gel composition* residing on only an interior surface thereof[, said polymeric material comprising a foamed or non-foamed gel composition comprising a block copolymer and mineral oil].

(ECF 139-3 and Def. *Markman* Hr'g Ex. 3, at col. 2, lines 4-15.)[5]

Following the two reexaminations, the parties continue to dispute the import of language within Claim 1. The dispute in this *Markman* proceeding surrounds the phrase " having a coating of a foamed or non-foamed block copolymer and mineral oil gel composition residing on only an interior surface thereof." (ECF No. 134-1, Joint Disputed Claim Terms Chart.)

## II. Claim Construction

### A. Standards Involved

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Arlington Indus. v. Bridgeport Fittings, Inc.*, 632 F.3d 1246, 1253 (Fed. Cir. 2011) (quoting *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotations omitted)); *see also Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.,* 381 F.3d 1111, 1115 (Fed. Cir. 2004). The purpose of a *Markman* hearing is to ascertain the meaning of a patent's claims so that it is clear precisely what has been patented and, by consequence, the protections the patent therefore affords the patent holder. *See Phillips*, 415 F.3d at 1312. *See also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) ("When a court construes the claims of the patent . . . the court is defining the federal legal rights created by the patent document"), *aff'd*, 517 U.S. 370 (1996).

---

[5] Matter in bold brackets appeared in the patent, but was deleted and is no longer part of the patent; matter printed in italics indicates additions made to the patent.

There is no "rigid algorithm for claim construction." *Phillips*, 415 F.3d at 1324. Rather, in construing the meaning of a patent's claims, the Court is guided by a set of principles that the Federal Circuit has described as follows:

> The claim terms " 'are generally given their ordinary and customary meaning.' " *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation." *Id.* "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* "In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims." *CollegeNet, Inc. v. Apply Yourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005) (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002)).

*Varco, L.P. v. Pason Sys. USA Corp.*, 436 F.3d 1368, 1372-73 (Fed. Cir. 2006). The starting point in claim construction therefore lies with the language of the claims themselves. In considering a patent's language, a court should apply the plain meaning rule, presumptively giving claim terms their ordinary, plain meaning. *Teleflex*, 299 F.3d at 1325. A court may, however, depart from a term's plain meaning if the patentee has acted as a lexicographer or otherwise limited the scope of the invention through a clear disclaimer in the specification or prosecution history. *Phillips,* 415 F.3d at 1316-17.

Of considerable import to claim construction is the intrinsic evidence, which includes the claim language, the specification, and the prosecution history as applicable. *World Kitchen (GHC), LLC v. Zyliss Haushaltwaren AG*, 151 F. App'x 970, 972 (Fed. Cir. 2005) (citing *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001)); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). When this intrinsic evidence provides an unambiguous description of the scope of the invention, reliance on

7

extrinsic evidence is improper. *Vitronics Corp.*, 90 F.3d at 1582-83.

But although less significant than intrinsic evidence, extrinsic evidence is still of value to claim construction when necessary. *Phillips*, 415 F.3d at 1317. This latter category encompasses such things as expert and inventor testimony, as well as texts such as treatises and dictionaries. *Id.* (quoting *Markman*, 52 F.3d at 980). A court may entertain expert testimony for numerous purposes, such as

> to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.

*Phillips*, 415 F.3d at 1318. The value of expert testimony in regard to claim construction is qualified, however, as an expert cannot offer an opinion of any value that is at odds with the intrinsic evidence of a patent. *Id.* (quoting *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998)); *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 908 n.1 (Fed. Cir. 2005).

With these governing principles in mind, the Court now turns to the parties' competing positions on the construction of Claim 1.

### B. Disputed Claim Term

The disputed claim term before the Court consists of 22 words: "having a coating of a foamed or non-foamed block copolymer and mineral oil gel composition residing on only an interior surface thereof." (ECF No. 134-1.) As a practical matter, only 10 of these words are truly in dispute between OWW and ALPS. The parties' disagreement boils down to the meaning of "having a coating . . . residing on only an interior surface thereof." The parties have very different views on how much of the "gel composition" can appear on the surface opposite the

"interior surface."

### 1. *Proposed Constructions of the Parties*

OWW proposes that the Court construe the disputed term exactly the same way as it construed the term "coated on only one side" in connection with the *Markman* proceeding before reexamination. (*See* ECF No. 50.) There, the Court construed "coated on only one side" (as that term existed in the '237 patent before reexamination) to mean "the presence of a layer of a substance on a surface of a fabric, with no observable penetration of the substance onto the opposing surface of the fabric." (*Id*. at 14.) OWW posits that the reexamined term "having a coating . . . residing on only an interior surface thereof" likewise means that the gel composition "is present as a layer on a surface of a fabric, with no observable penetration of the substance onto the opposing surface of the fabric." (Joint Disputed Claim Terms Chart, ECF No. 134-1; *see also* Pl. Br., ECF No. 139, at 9-10.)

For its part, ALPS pushes for a much narrower construction of Claim 1 with respect to where the gel composition can be found on the fabric of the tube sock-shaped covering described in the '237 patent. ALPS proposes that the Court construe the disputed term to mean "covered or spread with a layer of a substance on top of the inside of a fabric, with no penetration of the substance into the fabric." (Joint Disputed Claim Terms Chart, ECF No. 134-1; *see also* Def. Br., ECF No. 138, at 9-12.) In other words, ALPS contends that the term "having a coating . . . residing on only an interior surface thereof" means that *none of the gel substance whatsoever* may penetrate into the fabric; even if the gel composition did not penetrate to the opposing surface of the fabric (*i.e.*, opposite the "interior surface"), ALPS argues that *any* penetration past the "top of the inside of a fabric" would be inconsistent with Claim 1, as reexamined.

9

ALPS's argument relies heavily on the fact that Claim 1 was amended after reexamination to change the language previously construed by this Court. Because the language was amended specifically "to overcome prior art" (namely, the Silosheath product line), ALPS says it is "nonsensical" to give the amended language the same definition as the Court did the original claim. (Def. Br., ECF No. 138, at 8-9.)

ALPS contends that further support for its proposed construction is found in the amended claim's change in language from coating being "on only one side" to "residing on an interior surface." (Def. Br., ECF No. 138, at 9.) In ALPS's view, "[i]f the composition can only be on the surface, it cannot penetrate into the fabric" because if it did, "it would no longer be only on the surface." (*Id.* (emphasis in original).) For good measure, ALPS says that the term "residing" also indicates that the gel composition must be only on the "interior surface," without *any* penetration of the fabric. (*Id.* at 11.) As further support for this position, ALPS contends that the term "coating" suggests the absence of penetration into the fabric because "coating" is defined principally as a "coat, covering." (*Id.* (citing *Merriam-Webster* dictionary definition of "coating").) And a "covering is not typically something that penetrates or seeps into whatever it is on top of." (*Id.*)

### 2. The Court's Claim Construction

As in the previous claim construction proceeding in this case, the Court finds neither party's proposed construction to be satisfactory. (*See* ECF No. 50, at 12.) On the one hand, the Court agrees with ALPS that the amendments made by the PTO after reexamination must be given effect and that OWW's proposed adoption of the identical construction this Court previously gave the original claim language does not give due respect to the amendments. On

the other hand, however, the Court find that ALPS's proposed construction goes too far in its restriction of where the gel composition can be found on the tube sock-shaped covering. ALPS's construction is inconsistent with the intrinsic record, which, even after reexamination, contemplates some penetration of the gel substance into the fabric.

As the Court noted above, reliance on extrinsic evidence in the claim construction process is unnecessary where the intrinsic evidence (*e.g.*, the patent specification and file history) unambiguously describes the scope of the invention at issue. *See Vitronics Corp.*, 90 F.3d at 1582. Here, the Court need not go further than the intrinsic evidence in deciding the proper construction of the disputed language of the '237 patent. Based on the intrinsic evidence, the Court finds that the amended language of Claim 1 contemplates some penetration of the gel composition into the fabric, so long as the substance does not bleed through to the exterior surface of the fabric.

Important to this Court's analysis is the Examiner's NIIRC, issued in connection with the first reexamination. (ECF No. 139-4 and Pl. *Markman* Hr'g Ex. 4.) In his Statement of Reasons for Patentability and/or Confirmation, the Examiner referred specifically to the Silosheath product line and the differences between the Silosheath products and the subject matter of the '688 and '237 patents, differences that were discussed with OWW's representatives during the reexamination process. (*Id.* at 3.) As to the '237 patent, the Examiner proposed that Claim 1 be amended to include the language now at issue in this proceeding. According to the Examiner's Statement, the amendment "is seen to overcome the Silipos Silosheath references that formed the basis upon which the reexamination request was built" since OWW expressly defined "having a coating of polymeric material residing on only an interior surface" in Claim 1 "to mean that the

11

polymeric material is coated **_on_** the interior surface of the fabric with no polymeric material bleeding through the fabric *to the exterior surface*."  (*Id.* at 4 (second emphasis added).)

The term "polymeric material" was eventually changed to "a foamed or non-foamed block copolymer and mineral oil gel composition." (*See* Ex Parte Reexamination Certificate, Def. *Markman* Hr'g Ex. 3.)  But the amended claim's description of where the substance was located did not change.  More to the point, amended Claim 1 embodies the understanding between the PTO Examiner and OWW (*i.e.*, the patent owner) that the gel composition can bleed into the fabric so long as it *does not* bleed all the way through to the exterior surface.  (ECF No. 139-4 at Pl. *Markman* Hr'g Ex. 4, at 4.)  That the PTO Examiner had this understanding of the patented invention makes it evident that the term "residing on only an interior surface thereof" does not foreclose some penetration of the fabric by the gel substance, so long as the substance does not bleed through all the way to the exterior surface.

For this reason, the Court cannot accept ALPS's proposed construction, which would foreclose *any* "penetration" of the gel composition into the fabric.  When the Court construed Claim 1 as it existed before reexamination, ALPS took a similar position with respect to whether the term "coated on only one side" meant that the substance could "impregnate" the fabric. (ECF No. 50, at 11.)  ALPS argued for a construction that would have prevented any impregnation of the fabric. (*Id.*)  This Court rejected such a restriction, finding it problematic "that it imputes to the patent language a restriction on the method of manufacturing – impregnating – without necessity." (*Id.* at 12.)  The Court construed the term "only" as speaking to "where the coating lies, as opposed to where portions of the gel might be present that are unobservable to the naked eye.  In other words, 'only' limits where the *coating* might be, but

12

permits some of the substance *that does not constitute a complete coating* to be present elsewhere–such as into the fabric and imperceptibly to the other side of the fabric." (*Id.* (emphasis in original).)

ALPS essentially reprises its argument in this *Markman* proceeding, contending that the amended language in Claim 1 ("having a coating . . . residing on only an interior surface thereof") supports a claim construction that categorically forecloses any "penetration" of the gel substance into the fabric. (*See* ECF No. 138, Def. Br., at 9-12.) ALPS explains that this Court's rationale in construing the original claim language "made sense when the claim language spoke of only one side, given that by its ordinary meaning, one side could potentially mean that the substance could be anywhere on the one side (i.e. penetrating through one side) as long as it did not come through and appear on the other side." (*Id.* at 9.) But now that the claim language says that the coating is "residing" on the "interior surface" of the fabric, ALPS argues that the Court's previous reasoning is no longer applicable because the gel composition "cannot penetrate into the fabric" if it can only be on the surface. (*Id.*)

But this Court does not read the amended language to command the categorical elimination of the possibility that the gel composition may penetrate the interior surface of the fabric. Accepting ALPS's reading of the amended language would require this Court to overlook the significant term "coating," which still appears in the amended Claim 1. The amended language of Claim 1 says that the "coating" must reside "on only an interior surface" of the fabric. In this sense, the amended claim language is no different than the original claim language. Just as the original claim language did, the amended language ("residing on only an interior surface") likewise speaks to where the *coating* lies as opposed to where portions of the

13

gel substance might be found.  (*See* ECF No. 50, at 12.)  The amended claim language does not prevent some of the gel substance from penetrating into the interior surface of the fabric, so long as there is no "coating" of it present on the exterior surface of the fabric.

In this vein, the Court is unpersuaded by ALPS's argument that the term "coating" somehow forecloses any penetration of the substance beyond the "interior surface."  ALPS contends that a "coating" of something "is not typically something that penetrates or seeps into whatever it is on top of."  (ECF No. 138, at 11.)  Regardless of whether this is true in a general sense, it misses the point.  A "coating" of a substance can be present on the surface of a fabric while still having some of the substance penetrate (or bleed into) the fabric.  Penetration by itself does not create a coating; it is only when the surface has a gel composition on it that a coating exists.  The premise that "coating" and "penetration" are mutually exclusive concepts is a false premise that is not supported by the intrinsic record.  So long as a "coating" of the gel substance described in the '237 patent resides on only the interior surface, some bleed-through of the substance into *but not through* the fabric is consistent with the amended language of Claim 1.

Even though the Court disagrees with ALPS's proposed construction, the Court also does not find well taken OWW's proposal that the Court apply the same claim construction to the disputed term of Claim 1 as it did prior to the reexamination.  While OWW proposes a construction that would allow *some* of the gel substance to be present on the exterior surface of the fabric, so long as it is not "observable" (*see* ECF No. 134-1, at Col. 2), the Court finds this construction inconsistent with what the PTO Examiner contemplated and what OWW agreed to on reexamination.  As the Examiner noted in his reasons supporting patentability following the first reexamination, the Examiner proposed the amended Claim 1 language to overcome the

14

Silipos Silosheath products, which were similar to OWW's claimed invention, but which the Examiner understood to have gel on the exterior surface of them.  (ECF No. 139-4 and Pl. *Markman* Hr'g Ex. 4, at 3-4.)  The Examiner and OWW therefore agreed to define the amended Claim 1 language "to mean that the polymeric material is coated **on** the interior surface of the fabric with no polymeric material bleeding through the fabric *to the exterior surface*."  (*Id.* at 4 (second emphasis added).)

This language convinces the Court that the Examiner's understanding of what was granted in amended Claim 1 is slightly different than before.  The Examiner presumably had before him this Court's previous claim construction decision in which this Court interpreted the original claim language to mean that the substance could penetrate the fabric all the way through to the "opposing surface" so long as the penetration was not "observable" on the opposing surface.  (ECF No. 50, at 14.)  The Examiner's statement in the NIIRC, however, does not contemplate that the gel substance will bleed through to the exterior surface *at all*.  Thus, the Court disagrees with OWW's position that there can be penetration onto the "opposing surface" as long as the substance is not "observable" on the "opposing surface."  Based on the Examiner's understanding of what he was approving in the reexamined Claim 1, the Court concludes that the amended language means that there can be no gel substance, observable or otherwise, on the exterior surface of the fabric.  While penetration of the gel substance *into* the interior surface of the fabric remains acceptable under the amended language of Claim 1, there can be no penetration (or bleeding through) of the substance *onto* the uncoated exterior surface.

For the foregoing reasons, the Court concludes that what was approved in the reexamined '237 patent's use of the words "having a coating of a foamed or non-foamed block copolymer

15

and mineral oil gel composition residing on only an interior surface thereof" is a clause meaning "having a layer of a block copolymer and mineral oil gel composition on the interior surface of a fabric, with no penetration of the substance reaching the exterior surface of the fabric."

### III.  Conclusion

The Court concludes that the foregoing claim construction controls.  The parties shall therefore proceed in a manner consistent with the conclusions of this Opinion and Order.

**IT IS SO ORDERED.**

        **/s/   Gregory L. Frost**
        **GREGORY L. FROST**
        **UNITED STATES DISTRICT JUDGE**