# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**THE OHIO WILLOW WOOD COMPANY,**

<table>
<tr><td>Plaintiff,</td><td>Case No. 2:04-cv-1223</td></tr>
<tr><td></td><td>JUDGE GREGORY L. FROST</td></tr>
<tr><td>v.</td><td>Magistrate Judge Abel</td></tr>
</table>

**ALPS SOUTH, LLC,**

      **Defendant.**

## OPINION AND ORDER

This is a patent infringement case involving Plaintiff Ohio Willow Wood Company ("OWW"), and Defendant ALPS South, LLC ("ALPS").  Before the Court are---

1. ALPS's Motion for Summary Judgment (ECF No. 162), OWW's Memorandum in Opposition (ECF No. 174), and ALPS's Reply in Support (ECF No. 176);

2. OWW's Motion for Summary Judgment on infringement (ECF Nos. 163 and 165), ALPS's Response in Opposition (ECF No. 171), and OWW's Reply (ECF No. 178); and

3. OWW's Motion for Summary Judgment on ALPS's counterclaim for inequitable conduct (ECF No. 164), ALPS's response in opposition (ECF No. 173), and OWW's Reply (ECF No. 177).

For the reasons set forth below, ALPS's motion for summary judgment (ECF No. 162) and OWW's motion for summary judgment on inequitable conduct (ECF No. 164) are **GRANTED**.  OWW's motion for summary judgment on infringement (ECF No. 165) is **DENIED**.

1

## I.  Background

OWW, an Ohio corporation based in Mt. Sterling, Ohio, is the owner of U.S. Patent No. 5,830,237 ("the '237 patent"), which issued on November 3, 1998.  The '237 patent is titled "Gel and Cushioning Devices" and involves technology related to coverings for amputees employing a prosthesis.  The relevant specification to the patent discloses a device in the form of a cushioned sock that fits over a residuum, or an amputation stump, so as to provide a cushion between the residuum and the artificial limb.  The "sock" has an open end for introduction of the residuum and a closed end opposite the open end.  Additionally, the device features a gel coating on the interior surface of the "sock," preferably comprised of a block copolymer and mineral oil compound, intended to ease discomfort and undesirable noise effects.  The named inventor of the '237 Patent, Bruce Kania, is himself a lower limb amputee who sought to create a device that would be comfortable and convenient for amputees, especially those who maintained active lifestyles.

Defendant ALPS is a prosthetics company based in St. Petersburg, Florida.  For more than 19 years, ALPS has manufactured and sold liners for use with prosthetics.  ALPS's president, Dr. Aldo Laghi (a chemical engineer), has invented and obtained patents for many designs for use with liners and sleeves.  Many of ALPS's early liners were made of silicone gel due to Dr. Laghi's familiarity with silicone.  ALPS's product line eventually included silicone liners attached to stretchable fabric covers for amputees to wear over a residuum.

By the 1990s, block copolymer gels were introduced into the field of prosthetics.  During that time period, Silipos, Inc., developed and marketed a product known as the Silosheath, which featured a block copolymer/mineral oil gel laminated to a covering of nylon fabric.  The

Silosheath was known to OWW and was, in fact, shown to the PTO examiner during the

reexamination process involving the '237 Patent.

The Silipos Silosheath, featuring nylon fabric lined with a mineral oil gel, was not the

only Silipos product developed in the 1990s for use with prosthetics.  In June 1993, Silipos filed

a patent application that described a fabric covering lined with a triblock copolymer mineral oil

gel for use by amputees.  Though this patent application was ultimately abandoned, Silipos

developed products before 1995 that embodied what was disclosed in that application.  One

example was a product known as the Silipos Single Socket Gel Liner.  The Single Socket Gel

Liner used the same block copolymer and mineral oil gel used in the Silipos Silosheath, but used

a thick cotton fabric instead of a nylon sheath.  The gel was laminated to the interior of the

covering and it was intended for the product not to have any bleed-through of the gel to the

exterior surface of the covering.  In contrast, the Silosheath was known to have some bleed-

through of the gel to the exterior surface of the nylon covering.

Also during the 1990s, ALPS expanded its product line to offer liners containing a gel

composition made of block copolymers and mineral oil.  On December 27, 2004, OWW

commenced this action, claiming that ALPS infringed on numerous claims of the '237 Patent.

Specifically, OWW contends that ALPS's Thermoliner, Liberty Liner, General Purpose Liner,

Extreme AK/BK Gel Liner, EZ Flex Liner, Proximal Seal Interface Gel Liner, and WintersGel

Liner products infringe the asserted claims of the '237 Patent.

Many of the disputed '237 Patent claims were linked to Claim 1, which at that time read:

A tube sock-shaped covering for enclosing an amputation stump, said covering
having an open end for introduction of said stump and a closed end opposite said
open end, said covering comprising fabric in the shape of a tube sock coated on only
one side thereof with a foamed or non-foamed gel composition comprising a block

copolymer and mineral oil.

U.S. Patent No. 5,830,237 col.13 ll. 53-59 (filed Mar. 5, 1996).

After a claim construction hearing in 2006, this Court construed the term "coated on only one side" to mean "the presence of a layer of a substance on a surface of a fabric, with no observable penetration of the substance onto the opposing surface of the fabric."  (Opinion and Order 14, ECF No. 50.)

### A. Reexamination of the '237 Patent

After this Court's claim construction opinion in 2006, Dr. Laghi requested an ex parte reexamination of the '237 patent by the United States Patent and Trademark Office ("PTO"). The PTO Examiner found Claim 1 patentable "because the prior art fails to disclose or suggest a tube sock-shaped covering for enclosing an amputation stump, wherein the covering has a coating of a polymeric material *residing on only an interior surface thereof*."  (Notice of Intent to Issue Ex Parte Reexamination Certificate 2, ECF No. 162-15 (emphasis in original).)

The Examiner also referred specifically to the reexamination of a related patent, Patent No. 6,964,688 ("the '688 Patent").  During the reexamination proceeding for the '688 patent, the Examiner noted that OWW presented a sample of a Silipos Silosheath product that "exhibited gel on its exterior."  (*Id.* at 3)  Proposed amendments to Claim 1 of the '688 patent "were discussed in order to more clearly recite that the polymeric material is resident *on only an interior surface of the fabric* and does not bleed through to the outside."  (*Id.* (emphasis in original).)

With respect to the reexamination of the '237 patent, Claim 1 was amended as follows:

A tube sock-shaped covering for enclosing an amputation stump, said covering having an open end for introduction of said stump and a closed end opposite said open end, said covering comprising fabric in the shape of a tube sock **and having a coating of polymeric material residing on only an interior surface** [coated on only one side] thereof, **said polymeric material comprising** [with] a foamed or non-foamed gel composition comprising a block copolymer and mineral oil.

(Ex Parte Reexamination Certificate, U.S. Patent No. 5,830,237 C1 col.2 ll.6-13 (issued Sept. 2, 2008).)[1]

Dr. Laghi requested a second reexamination of the '237 patent.  Ultimately, the Examiner rejected Claims 1 to 23 of the '237 Patent as "unpatentable" over the Silipos "Comfort Zone" liner products and other prior art.  *See Ex Parte Ohio Willow Wood Co.*, No. 2011-010158, slip op. at 5-6 (B.P.A.I.  Sept. 30, 2011).  The Examiner also rejected the claims in the '237 Patent based on a declaration from a Jean-Paul Comtesse, who claimed that Silipos developed a line of products that had *no* gel bleeding through to the outer surface of the liner.  *Id.* at 8.  Mr. Comtesse was involved in the development of Silipos products during the 1990s.  (Comtesse Dep. 13-19, ECF No. 163-2.)

OWW appealed the Examiner's decision to the Board of Patent Appeals and Interferences ("BPAI"), which reversed the Examiner's decision to reject the '237 Patent claims on reexamination.[2]  As to Claim 1 of the '237 Patent, the BPAI found insufficient evidence to support the Examiner's conclusion that the Silipos Single Socket Gel Liner "was covered in

---

[1]Matter enclosed in brackets appeared in the patent, but was proposed to be deleted by the Examiner; matter printed in bold underline indicates additions proposed by the Examiner.

[2]Claim 1 was amended for purposes of appeal to the BPAI, but the terms "coating" and "residing on only an interior surface" remained undisturbed in the claim as amended for appeal.

fabric with no gel bleed-through." *Id.* at 10.  Following the BPAI's reversal, the PTO issued an

Ex Parte Reexamination Certificate on November 29, 2011.  The reexamined patent recited

Claim 1 as follows:

> A tube sock-shaped covering for enclosing an amputation stump, *said amputation stump being a residual limb*, said covering having an open end for introduction of said [stump] *residual limb* and a closed end opposite said open end, said covering comprising fabric in the shape of a tube sock [and], *said fabric* having a coating of [polymeric material] *a foamed or non-foamed block copolymer and mineral oil gel composition* residing on only an interior surface thereof[, said polymeric material comprising a foamed or non-foamed gel composition comprising a block copolymer and mineral oil].

Ex Parte Reexamination Certificate, U.S. Patent No. 5,830,237 C2 col.2 ll.4-14 (issued Nov. 29,

2011).[3]

Following the two reexaminations, the parties continued to dispute the import of

language within Claim 1.  Following a claim construction hearing held in February 2012, the

Court construed the Claim 1 term "having a coating of a foamed or non-foamed block copolymer

and mineral oil gel composition residing on only an interior surface thereof" to mean "having a

layer of a block copolymer and mineral oil gel composition on the interior surface of a fabric,

with no penetration of the substance reaching the exterior surface of the fabric."  (Order and

Opinion 15-16, ECF No. 150.)

## B.    Collateral Estoppel and *Thermo-Ply*

During the pendency of this case, OWW was involved in another patent infringement

lawsuit, the *Thermo-Ply* case in the Eastern District of Texas, relating to a related patent to the

'237 Patent.  *See Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, No. 9:07-cv-274, 2009 U.S. Dist.

---

[3]Matter in bold brackets appeared in the patent, but was deleted and is no longer part of the patent; matter printed in italics indicates additions made to the patent.

LEXIS 127488 (E.D. Tex. Nov. 20, 2009).  In *Thermo-Ply*, OWW filed suit in the Eastern

District of Texas, alleging that defendant Thermo-Ply, Inc. infringed 44 claims of Patent No.

7,291,182 ("the '182 Patent").  The '182 Patent is a continuation of the '237 Patent, and

similarly discloses prosthetic liners made from a fabric coated with gel.  *See* U.S. Patent No.

7,291,182, col.1 ll.1-36 (filed July 23, 1998).  Thermo-Ply moved for summary judgment in the

case, arguing that all of OWW's asserted claims of the '182 Patent were invalid as obvious

within the meaning of 35 U.S.C. § 103(a).[4]

> Claim 1 of the '182 Patent at issue in *Thermo-Ply* disclosed—
>
> A cushion liner for enclosing an amputation stump, said liner comprising a fabric covering having an open end, said fabric coated seamlessly on only an inside surface thereof with a polymeric cushioning gel that substantially conforms to the shape of said amputation stump when said liner is worn; wherein said liner is configured such that said polymeric cushioning gel is in contact with the skin of said amputation stump when said liner is worn by a user thereof.

*Thermo-Ply*, slip op. at 4 (quoting '182 Patent, col. 14 ll. 7-16).  The *Thermo-Ply* court's

summary judgment decision focused mainly on this claim; in particular, the district court

considered whether Claim 1 of the '182 Patent would have been obvious to a person of ordinary

skill in the art based on the prior art of the Silipos Silosheath and United States Patent No.

4,923,474 ("the Klasson Patent").  *Id.* at 4-11.[5]

---

[4]35 U.S.C. § 103(a) provides: "A patent may not be obtained though the invention is not identically disclosed or described as set forth in [35 U.S.C. § 102], if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

[5]In *Thermo-Ply*, the parties agreed that a person of ordinary skill in the art was "a practicing prosthetist having at least two years of clinical experience as of December 31, 1994." *Thermo-Ply*, slip op. at 4.

OWW argued that claim 1 of the '182 Patent was not obvious because neither the Silosheath nor any other relevant prior art disclosed a fabric cushion liner that is coated with gel only on one side, without the gel bleeding through to the exterior surface of the fabric. *See id.* at 5. OWW further contended that no one of ordinary skill in the art of prosthetics would have combined prior art references to achieve a fabric coated on only one side without bleed through. *Id.* at 6.

The *Thermo-Ply* court acknowledged that "there is no question that a thin layer of bleed-through is evident to the touch" on the Silipos Silosheath. *Id.* at 5. But in the final analysis, this difference between the Silosheath and OWW's claimed invention was not enough to prevent the district court from invalidating for obviousness claim 1 of the '182 Patent. The *Thermo-Ply* court concluded that claim 1 of the '182 Patent was obvious based on a combination of the Silosheath and the Klasson Patent (as embodied in a product known as the "ICEROSS" liner). Though OWW argued that its invention was (1) patentable over the Silosheath because the Silosheath had bleed-through and (2) patentable over the ICEROSS because that product was simply a gel liner that required a separate fabric to be donned over it to facilitate insertion into a prosthesis (as opposed to the one-piece liner claimed in the '182 and '237 Patents), the *Thermo-Ply* court was not convinced—

> OWW argues that earlier liners like the ICEROSS had a separate fabric that is donned over the liner to facilitate insertion into the prosthesis. Mr. Kania [inventor] testified at the hearing that a single piece liner would be easier to use than one that required the wearer to take on and off two or more layers. That is true, but it is also obvious. Because obviousness looks at combinations of prior art, each element of a claimed invention need not be present in a single piece of art for that invention to be obvious.

> The ICEROSS liner had the thick gel to provide cushioning, and used a separate smooth fabric cover to facilitate insertion into the prosthesis. The thinner gel of the

> Silosheath was bonded to a smooth fabric, such that it was a single piece. It is true that the early versions of the Silosheath had some bleed through of gel, making it more difficult to insert into the socket of the prosthesis. However, . . . the choice of an impermeable fabric, through which gel does not bleed, for use in the inventions claimed by the '182 patent was merely the selection of a well-known material that simply performed in accordance with its well-known properties.

*Id.* at 9-10 (citation omitted). Accordingly, the *Thermo-Ply* court concluded that the use of an "appropriate fabric" (*i.e.*, one that was impermeable to bleed-through) to create a single-piece liner was an obvious combination of the Silosheath and ICEROSS prior art that was unpatentable. The *Thermo-Ply* court therefore invalidated Claim 1 of the '182 Patent for obviousness.

The *Thermo-Ply* court went on to invalidate as obvious the remaining independent claims of the '182 Patent, none of which differed substantially from claim 1. The *Thermo-Ply* court found that none of these claims could overcome the prior art of the Silosheath and the Klasson Patent (as embodied in the ICECROSS). The *Thermo-Ply* court also invalidated each of the dependent claims as obvious. The court grouped the various dependent claims into six categories: there were (1) "varying thickness" claims relating to the thickness of the gel (claims 4, 15, 23, 34, 44, and 54), (2) "completely coated" claims specifying that the fabric was completely coated with gel (claims 5, 16, 27, 37, 47, and 59), (3) "vitamin" claims (claims 7, 18, 29, 39, 49, and 61) specifying that the polymeric gel include a vitamin, (4) "mineral oil" claims specifying that the polymeric gel include mineral oil (claims 9, 19, 30, 40, 50, and 62), (5) "docking means" claims that claimed "only a fabric cover comprising a docking means at the distal end" (claims 10, 20, 31, 41, 51, and 55), and (6) "molded docking means" claims specifying that the "docking means" be molded to the fabric on the liner's exterior (claims 11, 21, 32, 42, 52, and 56). *Thermo-Ply* at 15-18. The court found each of these claims invalid for

9

obviousness, albeit for varying reasons: the "varying thickness" claims employed an obvious technique (*id.* at 15); the "completely coated" claims were simply "common sense" based on the testimony of OWW's own expert (*id.* at 16); the "vitamin" claims were admitted by the patentee to be "not new" (*id.*); the "mineral oil" claims were not new because mineral oil was used in the gel of the Silipos Silosheath (*id.*); and the "docking means" and "molded docking means" claims were obvious because they merely added a known technique to known prior art (*id.* at 17).

Having found each of the '182 Patent claims at issue to be invalid for obviousness, the district court granted summary judgment in favor of Thermo-Ply. In a summary decision, the Federal Circuit ultimately affirmed the judgment of the district court, upholding the determination that the '182 Patent is invalid for obviousness. *Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, 440 F. App'x 926 (Fed. Cir. 2011).

Shortly after the affirmance by the Federal Circuit, ALPS filed in this case a Motion for Summary Judgment on the Issue of Collateral Estoppel. (Def.'s Mot., ECF No. 145.) In an Opinion and Order issued on June 15, 2012, this Court granted in part ALPS's motion and found Claims 1, 2, 4, 15, 16, and 20 of the '237 Patent to be invalid for obviousness based on the collateral estoppel effect of *Thermo-Ply*. (Opinion and Order, ECF No. 182.) The Court denied summary judgment on Claims 18, 19, 21, 22, and 23, however, finding that the *Thermo-Ply* decision did not have collateral estoppel effect on those claims. (*Id.* at 22-23.)

### C. '237 Patent Claims Remaining for Adjudication

During the pendency of ALPS's motion for summary judgment on the issue of collateral estoppel, the parties filed the various dispositive motions that are now before the Court. Specifically, ALPS seeks summary judgment on OWW's complaint on the basis of the '237

Patent's invalidity.  (Def.'s Mot. Summ. J., ECF No. 162.)  After this Court's collateral estoppel ruling, only Claims 18, 19, 21, 22, and 23 remain for this Court's adjudication.  These claims read as follows:

| Claim Number | Claim Language |
| --- | --- |
| 18 | The tube sock-shaped covering according to claim 1, wherein said gel composition comprises 60 – 85% by weight mineral oil. |
| 19 | The tube sock-shaped covering as claimed in claim 18, wherein said fabric is a stretchable fabric having an elasticity of 10 – 400%. |
| 21 | The tube sock-shaped covering as claimed in claim 20, wherein said fabric is a stretchable fabric having an elasticity of 10 – 400%. |
| 22 | The tube sock-shaped covering as claimed in claim 1, wherein said fabric is a stretchable fabric having an elasticity of 10 – 400%. |
| 23 | The tube sock-shaped covering as claimed in claim 1, wherein said gel composition has a Shore A Durometer of from 1 – 20. |

('237 Patent, col. 14 ll. 47-51, 55-62.)

For its part, OWW moves for summary judgment in its favor on the issue of infringement, seeking the Court's ruling as a matter of law that certain products of ALPS infringe OWW's '237 Patent.  (Pl.'s Mot. Summ. J., ECF No. 165.)  OWW also moves for summary judgment on ALPS's counterclaim alleging that OWW's patent is invalid by reason of OWW's inequitable conduct.  (Pl.'s Mot. Summ. J., ECF No. 164.)

11

## II. Discussion

### A.  Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003).  An issue of fact is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52; *see also Hamad* at 234-35.

Summary judgment is as available in patent cases as in other areas of litigation.  *Tokai Corp. v. Easton Enters., Inc.*, 632 F.3d 1358, 1366 (Fed. Cir. 2011). A district court can properly grant summary judgment on patent invalidity when the factual inquiries into obviousness present no genuine issue of material fact. *Id.* Where the content of the prior art, the scope of the patent

12

claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of

the claim is apparent in light of these factors, summary judgment is appropriate.  *KSR Int'l Co. v.*

*Teleflex Inc*., 550 U.S. 398, 427, 127 S. Ct. 1727, 167 L. Ed. 2d 705 (2007).

### B.         Obviousness

A claimed invention is unpatentable if the differences between the invention and the prior

art "are such that the subject matter as a whole would have been obvious at the time the

invention was made to a person having ordinary skill in the art."  35 U.S.C. § 103(a).  Patents

enjoy a presumption of validity, 35 U.S.C. § 282 (2006), and a party seeking to invalidate a

patent must overcome this presumption by facts supported by clear and convincing evidence.

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc*., 246 F.3d 1368, 1374 (Fed. Cir. 2001).

The determination of whether a claimed invention is obvious depends on a number of

factual inquiries, such as (1) the content and scope of the prior art, (2) the level of ordinary skill

in the prior art, (3) the differences between the prior art, and (4) any objective evidence of non-

obviousness.  *Graham v. John Deere Co.*, 383 U.S. 1, 14, 86 S. Ct. 684, 15 L. Ed. 2d 545

(1966).  Despite the factual underpinnings, the ultimate judgment of obviousness is a legal issue

for the court.  *See KSR Int'l*, 550 U.S. at 427.  Accordingly, the question of obviousness is one

that the court can appropriately determine on summary judgment.  *See id.*  To obtain summary

judgment, the party seeking to invalidate a patent must submit such clear and convincing

evidence of invalidity that no reasonable jury could find otherwise.  *Eli Lilly & Co. v. Barr*

*Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001).

In this Court's previous Opinion and Order granting (in part) ALPS's motion for partial

summary judgment on the issue of collateral estoppel, the Court invalidated Claims 1, 2, 4, 15,

16, and 20 of the '237 Patent for obviousness, based on the collateral estoppel effect of *Thermo-Ply*. (Opinion and Order 28, ECF No. 182.) Thus, the only claims remaining for adjudication are dependent claims 18, 19, 21, 22, and 23. (*Id.*)

### 1. Person of Ordinary Skill in the Art

The Court evaluates obviousness from the perspective of a person of ordinary skill in the art of the patent. *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985). "A person of ordinary skill is also a person of ordinary creativity, not an automaton." *KSR Int'l.*, 550 U.S. at 421.

Here, the parties have a slight disagreement with respect to what constitutes a "person of ordinary skill in the art." OWW contends that the relevant person of ordinary skill in the art is a prosthetist. (Pl.'s Opp'n 50, ECF No. 174.) ALPS agrees that a "prosthetist or one with one to two years of experience manufacturing prosthetic components would be one ordinarily skilled in the art." (Def.'s Mot. Summ J. 39, ECF No. 162.) ALPS also "proffers" that a chemist would also be one of ordinary skill in the art of the claim limitations at issue in this case. (*Id.*)

The Court has no problem concluding that a prosthetist is a person of ordinary skill in the art. And because the parties agree at least to that extent, the Court will evaluate the obviousness determination based on prosthetist being the relevant person of ordinary skill in the art.

### 2. Claim 18: 60-85% Mineral Oil

Claim 18 of the '237 Patent derives from Claim 1, adding the limitation that the polymeric gel coating "comprises 60-85% by weight mineral oil." Having found Claim 1 invalid for obviousness by virtue of collateral estoppel, the Court's obviousness inquiry regarding Claim 18 focuses on the "mineral oil" aspect of the claim. Just as it did with its merits-based

14

arguments regarding Claim 1, ALPS argues that Claim 18 is obvious by virtue of the prior art. This Court agrees.

ALPS relies on declarations of Drs. Atwood and Laghi, as well as testimony from Comtesse, to establish that the 60-85% mineral oil limitation was present in the prior art.  Dr. Laghi testified in his declaration that Silipos announced in October 1994 a new product, called the Single Socket Gel Liner, that featured a triblock copolymer/mineral oil gel coating on the interior of a Coolmax™ fabric.  (Laghi Decl. ¶ 9.)  Dr. Atwood inspected and tested the Silipos Single Socket Gel Liner product and determined that it utilized gel comprised of 60-85% mineral oil by weight.  (Atwood Decl. ¶ 10.)  Dr. Atwood likewise inspected another product, the Fay Liner (not a Silipos product), and concluded that it also used gel comprised of 60-85% mineral oil by weight.  (*Id.*, ¶ 11.)

In response, OWW contends that "ALPS offers no explanation as to how this element is taught by the combination of the Silosheath and Klasson/ICEROSS product."  (Pl.'s Opp'n 54.)  But this argument does not undercut the obviousness analysis with respect to the mineral oil element of Claim 18.  The Silipos Silosheath and the ICEROSS were not the only pieces of prior art relied upon by ALPS in making the argument for Claim 18 being invalid for obviousness.  As set forth above, ALPS relied heavily upon the Silipos Single Socket Gel Liner as a relevant piece of prior art that incorporated the elements claimed in Claim 18 of the '237 Patent.

The Court is also mindful of the fact that the *Thermo-Ply* court rejected "mineral oil" claims of the related '182 Patent based on the fact that mineral oil "was used in the gel of the Silipos sheaths – like the Silosheath – prior to 1995."  *Thermo-Ply* at 16 (citing deposition testimony of OWW expert witness).  And as the *Thermo-Ply* court held, one of ordinary skill in

15

the art of prosthetics would naturally combine the ICEROSS product (which used a thick gel to provide cushioning) with the Silipos Silosheath product (using a thinner gel bonded to a smooth fabric) to seek the benefits of both. *Id.* at 10-11.

Nonetheless, OWW argues that there is no corroboration for ALPS's witness testimony concerning the mineral oil composition of the gel. OWW cites testimony from Robert McKelvey of Silipos, who admits that Silipos did not even know the formula for its gel and was "merely told" the gel was made from a block copolymer and mineral oil. (McKelvey Dep. 56-57, ECF No. 58-9.) This was because Silipos bought the gel from a third party, which did not reveal the formula other than to say that the gel was made from a triblock copolymer and mineral oil. (*Id.*) Using this lack of knowledge of the mineral oil composition, OWW says that ALPS cannot show obviousness by clear and convincing evidence.

The Court is not persuaded by OWW's argument. "The rule of corroboration is not intended as a technical trap to obfuscate truth and impede the search for a just result." *TradeCard, Inc. v. S1 Corp.*, 509 F. Supp. 2d 304, 331 (S.D.N.Y. 2007). In this case, there is testimony reflecting the presence of 60-85% by weight mineral oil in prosthetic liner products that are prior art to the '237 Patent. There is corroboration of that testimony in the form of a patent application filed by Silipos on June 15, 1993, entitled "Gel-Impregnated Protective Garments." (Def.'s Mot. Summ. J., Ex. XX.) *See Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001) (including an abandoned patent application as an example of corroborating evidence). That application spoke of a protective garment comprised of an outer fabric layer and an inner layer, accessible to the skin, that comprises a mixture of "polymer and mineral oil." (*Id.*) Even though the patent application did not necessarily speak to

16

the mineral oil weight range, this fact does not diminish the application's status as corroborating

evidence.  *See TradeCard* at 332 (noting that there need not be corroboration with respect to *all*

factual disputes between the parties).

ALPS has clearly and convincingly demonstrated that the "60-85% by weight mineral

oil" limitation in Claim 18 was found in prior art.  There is no genuine issue of material fact on

this issue, rendering Claim 18 invalid for obviousness.

### 2.        Claims 19, 21, and 22: 10-400% Elasticity

Claims 19, 21, and 22 are similar and may be analyzed together.  Claim 19 depends upon

Claim 18 (invalidated above), adding only the limitation that the tube-sock shaped covering is

made of a fabric "having an elasticity of 10 - 400%."  Claims 21 and 22 depend upon Claim 20

and Claim 1, respectively, both of which were found invalid based on the collateral estoppel

effect of *Thermo-Ply*; like Claim 19, Claims 21 and 22 add only the limitation that the fabric of

the tube-sock shaped covering has an elasticity of 10 - 400%.

ALPS acknowledges that the *Thermo-Ply* court did not consider elasticity claims in its

decision.  Nonetheless, it argues that the Court can summarily invalidate these claims for

obviousness because the "claim range is so broad as to be obvious."  (Def.'s Mot. Summ. J. 37,

ECF No. 162.)  ALPS also argues that various prior art references that existed more than a year

before the application date of the '237 Patent support a finding of obviousness with regard to

these claims.  In particular, ALPS notes that the Silipos Single Socket Gel Liner and the Fay

Liner were products that incorporated stretchable material into their design.  "The fabric

covering on each liner is made of a stretchable material, and each liner has the capacity to stretch

greater circumferentially than vertically and elasticity of 10 to 400%."  (*Id.* at 39 (citing

Comtesse Dep. 125 and Fay Dep. 138, 143).)

In its effort to overcome summary judgment, OWW argues that ALPS cites no support for its sweeping conclusion that the specified elasticity range is so broad as to be obvious on its face.  OWW also argues that the Klasson Patent—prior art that ALPS relies upon—actually teaches *in*elasticity.  Thus, OWW argues that "it would not have been obvious" to utilize stretchable fabric to form the claimed invention described in the '237 Patent.  (Pl.'s Opp'n 55, ECF No. 174.)

OWW's arguments do not create a genuine issue of fact for trial with respect to Claims 19, 21, and 22.  As noted previously, the ultimate judgment of obviousness is a legal issue for the court.  *KSR Int'l*, 550 U.S. at 427.  And considering the prior art that existed when the '237 Patent application was filed, the use of an elastic fabric would have been obvious to a person of ordinary skill in prosthetics.  Though OWW emphasizes that the Klasson Patent (embodied in the ICEROSS product) teaches "inelasticity," OWW's argument ignores the prior art that featured gel liners combined with fabric.  And in light of the testimony establishing that the Single Socket Gel Liner and the Fay Liners were comprised of stretchable fabric within the 10 - 400% elasticity range, the Court is unable to conclude that the limitation in Claims 19, 21, and 22 of a fabric "having an elasticity of 10 - 400%" creates a patentable invention.  Claims 19, 21, and 22 are invalid for obviousness.

### 3.     Claim 23: Shore Durometer Range 1-20

Claim 23 of the '237 Patent is dependent on invalidated Claim 1, adding only the limitation that the gel composition described in Claim 1 "has a Shore A Durometer of from 1–20."  ("'237 Patent, para. 14, ll. 62-63.)  The "Shore A Durometer" is a measure of the

"hardness" of the gel composition. (Fay Dep. 138.) ALPS contends that relevant prior art, namely the Silipos Single Socket Gel Liner and the Fay Liners, used a gel composition that measured within 1–20 on the Shore A durometer. (Comtesse Dep. 99, 114, 125; Fay Dep. 132-53; Atwood Decl. ¶¶ 10-11.)

In response, OWW offers little resistance to defend Claim 23 against a finding of obviousness. OWW argues simply that "ALPS completely failed to address this claim in its obviousness analysis." (Pl.'s Opp'n 55, ECF No. 174.) But this contention is incorrect: ALPS addressed Claim 23 in its motion for summary judgment, citing the testimony of Comtesse, Fay, and Atwood in which they testified that certain Silipos liners and the Fay liners used gel that measured within 1–20 on the Shore A Durometer before the '237 Patent application was filed. (Def.'s Mot. Summ. J. 39, ECF No. 162.)

OWW has not come forward with evidence to rebut ALPS contention of obviousness with respect to Claim 23. The Court therefore finds Claim 23 invalid.

### 4.       Motivation to Combine Prior Art

The Supreme Court has counseled that "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l*, 550 U.S. at 418. "Although common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Id.* Focusing on this theme, OWW argues that ALPS provides "zero explanation" as to why a person of ordinary skill in the art of prosthetics would have been

19

motivated to combine the Silosheath and Klasson prior art references.

But this argument fails to persuade the Court that there is a genuine issue of material fact for trial.  OWW's suggestion that there was no "motivation" to combine the Silipos Silosheath and Klasson references is belied by the fact that Silipos produced other products, such as the Single Socket Gel Liner, that embodied the same concept of a liner made up of a mineral oil gel coated onto a stretchable fabric.  For OWW to claim that there was "no motivation" to combine these references simply ignores the evidence of similar products that combined the concepts of the Silipos Silosheath and Klasson/ICEROSS references.  In this case, there is evidence in the record showing a motivation to combine the concepts of a gel liner and a fabric covering into a single device.

As a more general matter, the Court does not view OWW's "motivation" argument as a valid basis upon which it can elude summary judgment on obviousness grounds.  "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls.  What matters is the objective reach of the claim."  *KSR Int'l*, 550 U.S. at 419.  If the claim's reach extends to what is obvious, the claim is invalid.  *Id.*  As set forth above, the reach of Claims 18, 19, 21, 22, and 23 extends to what is obvious.  ALPS has provided clear and convincing evidence that, at the very least, the Silipos Single Socket Gel Liner embodied these claims of the '237 Patent.  While OWW denies that there was "motivation" to combine the Silosheath and Klasson references before Mr. Kania did so, the Single Socket Gel Liner belies that claim.

### 5.     Secondary Considerations

Even if the '237 Patent claims at issue here are obvious in light of prior art, OWW

contends that "secondary considerations" cut against a finding of invalidity.  Secondary

considerations such as commercial success, long-felt but unsolved need, and licenses showing

industry respect may be evidence of non-obviousness that could overcome a claim of invalidity.

*See WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999); *see also Tokai*

*Corp.*, 632 F.3d at 1369.  The patentee, however, bears the burden of showing a nexus between

the claimed features of the invention and the secondary considerations offered as evidence of

non-obviousness.  *Id.*  Weak secondary considerations generally do not overcome a strong prima

facie case of obviousness. *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1373

(Fed. Cir. 2010).

OWW argues that the commercial success enjoyed by its Alpha liner products, its

products' satisfaction of a "long-felt but unsolved need," the fact that competitors "copied"

OWW's products, and testimonials about their products are secondary considerations that should

allow OWW to overcome summary judgment.  But these secondary considerations identified by

OWW cannot overcome the case for obviousness that ALPS has presented here.  OWW has

made no showing of a nexus between the secondary considerations and the specific features at

issue in Claims 18, 19, 21, 22, and 23.  Even assuming that OWW's secondary considerations

have support in the record, what remains missing from OWW's evidence is an explanation of

how these considerations are tied to the specific features of the gel composition having a mineral

oil range of 60-85% (Claim 18), the fabric having an elasticity of 10-400% (Claims 19, 21, and

22), or the gel having a Shore A durometer range of 1–20 (Claim 23).

Additionally, as to the secondary consideration of commercial success, the "nexus"

required between the success and the claimed invention must not be due to an element in the

21

prior art; if it is, the required "nexus" does not exist.  *Tokai Corp.*, 632 F.3d at 1369 (citing

*Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) and *Richdel, Inc. v.*

*Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983)).  While OWW goes to great pains to

establish the commercial success of its Alpha liner products that are the commercial embodiment

of the '237 Patent, the commercial success does not change the fact that the features of these

products are present in the prior art.  Accordingly, OWW's "secondary considerations" do not

trump a finding of obviousness in this case.

### C.    Constitutional Argument

In another argument to avoid summary judgment, OWW contends that granting summary

judgment to ALPS on invalidity grounds would violate OWW's constitutional rights.  (Pl.'s

Opp'n 60, ECF No. 174.)  Since the PTO operates under the "Constitutional mandate" of Article

I, Section 8 of the United States Constitution (granting Congress the power to provide for the

issuance of patents)[6] and the PTO has decided on examination and reexamination that the claims

in the '237 Patent are valid, OWW reasons that there is ipso facto a genuine issue of material fact

for trial on the question of the '237 Patent's validity or invalidity.  (*Id.*)

OWW's constitutional argument need not detain this Court long.  While the power to

promote invention lies with the Congress, the judicial power is vested in the courts.  That

judicial power extends "to all Cases, in Law and Equity, arising under this Constitution, the

Laws of the United States, and Treaties made."  U.S. Const. art. III, § 2, cl. 1.  The impact of

OWW's constitutional argument here would mean, if given its logical effect, that a district court

---

[6]"The Congress shall have Power . . . To promote the Progress of Science and useful
Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their
respective Writings and Discoveries...."  U.S. Const. art. I, § 8, cl. 8.

would have no judicial power to adjudicate a patent as invalid when the PTO has determined the patent's validity, at least in the context of Fed. R. Civ. P. 56. Not surprisingly, OWW cites no authority to support this remarkable proposition. Indeed, such a proposition would come as news to the Federal Circuit, not to mention the United States Supreme Court. *See e.g. Tokai Corp.*, 632 F.3d at 1366 (reciting the rule that a district court can properly grant summary judgment on patent invalidity, notwithstanding the statutory presumption of patent validity); *KSR Int'l*, 550 U.S. at 424-28 (finding that the district court was correct to invalidate a patent on summary judgment based on obviousness).

### D. Anticipation and Intervening Rights Issues

ALPS also argues that the doctrine of anticipation provides another basis for invalidating the asserted claims of the '237 Patent. (Def.'s Mot. Summ. J. 20, ECF No. 162.) The doctrine of anticipation provides that a single prior art reference disclosing each limitation of a claim invalidates that claim by anticipation. *See Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005); *see also* 35 U.S.C. § 102(b). Here, ALPS argues that the Silipos Single Socket Gel Liner was on the market as early as October 1994, and that the Single Gel Liner encompassed all of the limitations contained in the '237 Patent claims at issue in this case. (Def.'s Mot. Summ. J. 21-22, ECF No. 162.) ALPS additionally contends that the Fay Liner was on sale before March 1995 and that this product also disclosed all of the limitations contained in the '237 Patent claims at issue in this case. (*Id.* at 23-24.)

For its part, OWW comes forward with evidence that calls into doubt the Court's ability to resolve ALPS's anticipation doctrine argument on summary judgment. But this Court need not resolve that issue. In light of the Court's previous ruling finding Claims 1, 2, 4, 15, 16, and

20 invalid for obviousness due to the collateral estoppel effect of *Thermo-Ply* (ECF No. 182) and

this Court's determination, *supra*, that Claims 18, 19, 21, 22, and 23 are similarly invalid for

obviousness, the Court need not reach the issue of anticipation.

In addition to arguing for invalidity of the asserted claims in the '237 Patent, ALPS also

contends that the doctrine of intervening rights precludes OWW from recovering damages for

products sold by ALPS before November 29, 2011, the date of issuance of the second

reexamination certificate for the '237 Patent.  (Def.'s Mot. Summ. J. 41, ECF No. 162.)  In light

of this Court's grant of summary judgment in ALPS's favor on Claims 18, 19, 21, 22, and 23 on

obviousness grounds and on Claims 1, 2, 4, 15, 16, and 20 on collateral estoppel grounds (ECF

No. 182), the intervening rights issue is moot.

### E.    OWW's Motion for Summary Judgment on Infringement

Also resolved by this Court's grant of ALPS's motion for summary judgment is OWW's

motion for partial summary judgment on the issue of infringement.  (Pl.'s Mot., ECF No. 165.)

Because this Court has found the '237 Patent claims at issue to be invalid, OWW's motion for

summary judgment on infringement is necessarily denied.

### F.    Inequitable Conduct

OWW seeks summary judgment on ALPS's counterclaim for inequitable conduct.  As a

threshold matter, this Court is aware that authority exists for the proposition that a district court

may dismiss as moot a counterclaim for inequitable conduct when it has found the asserted

patent claims invalid.  *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1383 (Fed. Cir.

2007) (affirming a district court's grant of summary judgment on invalidity grounds and

dismissing inequitable conduct counterclaim as moot).  But there is also authority for the

proposition that a counterclaim for inequitable conduct is not mooted by a determination of

patent invalidity when the accused infringer seeks attorneys' fees.  *See Howmedica Osteonics*

*Corp. v. Wright Med. Tech., Inc.*, No. 00-1167, 2010 U.S. Dist. LEXIS 32291, at *10 (D.N.J.

Mar. 30, 2010).  In light of the fact that ALPS includes a prayer for attorneys' fees in its

counterclaim for inequitable conduct and the fact that the parties have fully briefed OWW's

motion for summary judgment on the inequitable conduct issue, this Court declines to dismiss

the counterclaim as moot and will consider OWW's motion on the merits.

Under the heightened requirements for establishing inequitable conduct the "accused

infringer must prove the patentee acted with the specific intent to deceive the PTO."

*Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) (citing *Star*

*Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).

Misrepresentations or omissions of a prior reference that are characterized as negligent or even

grossly negligent under a "should have known" standard are insufficient to establish the specific

intent to deceive required by *Therasense*.  *Id*. (citing *Kingsdown Med. Consultants, Ltd. v.*

*Hollister, Inc*., 863 F.2d 867, 877 (Fed. Cir. 1988)).  Thus, the standard that an accused infringer

must establish by clear and convincing evidence is that the "applicant knew of the reference,

knew that it was material, and made a deliberate decision to withhold it."  *Id*.

The intent and materiality prongs are to be treated as separate requirements with separate

standards.  *Id.* (citing *Hoffmann-La Roche, Inc. v. Promega Corp*., 323 F.3d 1354, 1359 (Fed.

Cir. 2003)).  The intent element must be proven by clear and convincing evidence, meaning the

specific intent to deceive must be "the single most reasonable inference able to be drawn from

the evidence."  *Id*. (citing *Star*, 537 F.3d at 1366.)  Thus, where there are multiple reasonable

inferences to be drawn from the same evidence, specific intent to deceive the PTO cannot be found.  *Id.*

Under the materiality prong of the inequitable conduct analysis, the accused infringer must demonstrate but-for materiality in the absence of alleged affirmative egregious conduct. *Aventis Pharma S.A. v. Hospira, Inc.,* 675 F.3d 1324, 1334 (Fed. Cir. 2012).  A prior art reference meets the but-for materiality test if "the PTO would not have allowed a claim had it been aware of the undisclosed prior art."  *Therasense,* 649 F.3d at 1291.  Unlike the burden of proof in the intent prong, the materiality prong carries a preponderance of the evidence standard when assessing the "but-for" materiality of a withheld reference.  *Id.* at 1291-92.

In its opposition to OWW's motion for summary judgment on ALPS's inequitable conduct claim, ALPS argues that OWW engaged in inequitable conduct by (1) failing to list all inventors on the patent application, (2) withholding disclosure of prior art, and (3) affirmatively misrepresenting facts to the PTO about prior art and the deposition testimony of Mr. Comtesse. (Def.'s Opp'n 14-17, ECF No. 173.)[7]

### 1.    Failure to List Dr. Salusso as an Inventor

To demonstrate that OWW's failure to identify Dr. Salusso as an inventor constituted inequitable conduct ALPS must prove that OWW knew of the reference, knew the reference was material, and made a deliberate decision to withhold the information from the PTO.  Although

---

[7]As an initial matter, ALPS stresses that the Court should defer ruling on OWW's Motion pending additional discovery that may purportedly shed light on the inequitable conduct issue. (Def.'s Opp'n 1, ECF No. 173.)  In a Declaration submitted presumably to satisfy Fed. R. Civ. P. 56(d), Jason P. Stearns references 11 depositions ALPS requested to take, but fails to articulate why it cannot articulate facts to justify its opposition.  Since ALPS did not comply with the requirements of the Fed. R. Civ. P. 56(d), the Court sees no reason to defer its ruling under the circumstances present here.

ALPS is correct in stating that "inventorship is material" in obtaining a patent, it fails to put forth any factual support that Dr. Salusso was an actual co-inventor of this product. *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc*., 225 F.3d 1315, 1321 (Fed. Cir. 2000). As was indicated in *PerSeptive*, "[c]ollaboration on a project with a common goal does not of itself produce a joint invention." *Id*. at 1324. As is the case here, Dr. Salusso's contribution to the fabric component of the '237 Patent does not necessarily make her an inventor.

While there is certainly evidence of record to suggest that Dr. Salusso was a co-developer of the subject matter of the '237 Patent, the Court cannot conclude from the evidence that her work should be characterized as inventorship. Moreover, in any event, there has been no showing by ALPS of but-for materiality with respect to Dr. Salusso's exclusion as an inventor on the patent application. For these reasons the Court finds that a reasonable jury could not conclude that OWW's failure to list Dr. Salusso as an inventor constituted inequitable conduct.

### 2.     Withholding or Misrepresenting Prior Art

ALPS also argues that OWW engaged in inequitable conduct by withholding or misrepresenting prior art, particularly the prior art consisting of the Silipos Silosheath and other Silipos products. There is no dispute that OWW knew about the Silipos Silosheath. Even assuming that OWW knew the references were material, this Court cannot find that OWW made a deliberate decision to withhold the reference to the USPTO. Given that the Silipos Silosheath was referenced in the '237 Patent application (ECF No. 164-1), "various publications showing the Silosheath made by Silipos" were discussed at the ex parte reexamination proceeding (ECF No. 173-10), and that Mr. Kania, the patent owner, "presented a Silosheath from the relevant time period for examination which Silosheath exhibited gel on its exterior" (ECF No. 162-15),

27

this Court finds it difficult to view OWW's actions as a deliberate decision to withhold references to the Silipos Silosheath from the PTO, much less with the specific intent to deceive. Indeed, because the PTO Examiner viewed an actual Silipos Silosheath during the reexamination process, the Court cannot even say there is a triable issue with respect to whether OWW withheld the reference.

Nor can the Court find inequitable conduct with respect to other pieces of prior art that ALPS alleges OWW to have withheld from the PTO.  According to ALPS, OWW failed to disclose as prior art the existence of Silipos prosthetic liner products (namely, the Single Socket Gel Liner) that contained polymeric gel only on the inside surface of the fabric "sock"; this was significant because the '237 Patent survived the first reexamination only because the amended claim language made clear that the polymeric gel was coated only on the inside surface of the fabric, which the examiner found to be the key feature differentiating the '237 Patent from the prior art.   (Def.'s Opp'n 16, ECF No. 173.)

Despite ALPS's emphasis on OWW's alleged "withholding" of the Single Socket Gel Liner, the Court is unable to conclude that a reasonable jury could find OWW to have engaged in inequitable conduct.  The record does not support the notion that there has been any material withholding of information from the PTO.  Indeed, it was the Comtesse testimony about the structure of the Single Socket Gel Liner (and other Silipos products) that led the PTO examiner to *invalidate all claims* of the '237 Patent during reexamination.  (Office Action in Ex Parte Reexam. 10-15, ECF No. 173-16.)  Though the BPAI ultimately reversed the decision of the PTO, the BPAI's decision reveals that it did so not as a result of OWW concealing any material fact, but, rather, because it disagreed with the Examiner about the import of Comtesse's

28

deposition testimony and declaration.  *See Ex Parte Ohio Willow Wood Co.*, *supra*, slip op. at 9-10.  The fact that both the Examiner and the BPAI considered the Silipos prior art ALPS emphasizes here is fatal to ALPS's argument that OWW somehow misled the PTO.

Nor is the Court persuaded by the argument that "material misrepresentations" by OWW create an issue of fact for trial on an inequitable conduct issue.  Though ALPS's "Material Facts" section of its opposition to OWW's motion for summary judgment identifies multiple instances of alleged misrepresentations by OWW, ALPS's argument section relies only on OWW's alleged misrepresentations related to Mr. Comtesse's testimony.  (Def.'s Opp'n 17 and n.9, ECF No. 173.)  But as noted above, Mr. Comtesse's testimony was before the PTO and was, in fact, a basis for the BPAI's *reversal* of the Examiner's rejection of all 23 claims of the '237 Patent during reexamination.  *Ex Parte Willow Wood Co.*, slip op. at 9-10.  In light of the fact that Mr. Comtesse's testimony appears to have been squarely before the BPAI, a reasonable jury could not find that any misrepresentation by OWW of Comtesse's testimony (even assuming there was, in fact, any "misrepresentation") was material for purposes of an inequitable conduct defense.

For all of the above reasons, ALPS has failed to raise a genuine issue of material fact with respect to inequitable conduct, particularly in light of the heightened standard set forth by the Federal Circuit in *Therasense*.  OWW's motion for partial summary judgment on ALPS's counterclaim is therefore granted.

### III.  Conclusion

For the reasons set forth above, Defendant ALPS's Motion for Summary Judgment (ECF No. 162) and Plaintiff OWW's motion for summary judgment on ALPS's counterclaim for inequitable conduct (ECF No. 164) are **GRANTED**.  Plaintiff OWW's motion for summary

judgment on the issue of infringement (ECF Nos. 163 and 165) is **DENIED**.  Based on the above rulings and the Court's previous ruling on the collateral estoppel effect of *Thermo-Ply* (ECF No. 182), the claims of the '237 Patent at issue in this case are deemed invalid.

This matter is scheduled for a final pretrial conference on August 13, 2012, at 12:00 p.m. (Order, ECF No. 119.)  Notwithstanding the Court's disposition of the aforementioned motions, the pretrial conference will proceed as scheduled, during which time the parties should be prepared to address how they intend to proceed with the remaining claims in Defendant ALPS's Counterclaim.

**IT IS SO ORDERED.**

/s/   **Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**