# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**THE OHIO WILLOW WOOD COMPANY,**

        **Plaintiff,**

v.

**ALPS SOUTH, LLC,**

        **Defendant.**

Case No. 2:04-cv-1223
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth P. Deavers**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant's Objection (ECF No. 335) to the Magistrate Judge's Report and Recommendation (ECF No. 334). For the reasons that follow, the Court **ADOPTS** the Report and Recommendation (ECF No. 334) and **DISMISSES** Plaintiff's Objection (ECF No. 335).

### I.

The Ohio Willow Wood Company ("Plaintiff"), an Ohio corporation, initiated this case on December 27, 2004. (ECF No. 1). On November 18, 2011, Plaintiff filed an Amended Complaint. (ECF No. 120). Plaintiff alleged that Defendant Alps South, LLC ("Defendant"), a Florida based limited liability company, infringed on Plaintiff's patent, U.S. Patent No. 5,830,237 (the "'237 Patent"). (Compl. ¶ 9, ECF No. 1). Defendant brought a counterclaim, contending that the '237 Patent is unenforceable because Plaintiff acquired it through inequitable conduct. (Answer ¶ 92, ECF No. 127). On August 10, 2012, the Court ruled on the parties' cross motions for summary judgment. (ECF No. 209). The Court granted summary judgment in favor of Plaintiff on the issue

of inequitable conduct. (Op. & Or. at 1, ECF No. 209). However, the Court denied Plaintiff's Motion for Summary Judgment with respect to patent infringement, finding the '237 Patent claims at issue to be invalid. (*Id.*).

Both parties appealed to the Federal Circuit. (*See* ECF Nos. 217 & 222). On November 15, 2013, the Federal Circuit reversed the Court's grant of summary judgment on the issue of inequitable conduct. (ECF No. 226). The case was remanded. (*Id.*). After holding a bench trial on the issue of inequitable conduct, the Court ruled in Defendant's favor. (ECF No. 278). The Court also granted attorney fees to Defendant pursuant to 35 U.S.C. §285. (*Id.*). Following an appeal, the Federal Circuit affirmed the Court's judgment that: (1) the '237 patent is unenforceable for inequitable conduct, and (2) Defendant is entitled to attorney fees. (ECF No. 290). The case was remanded again, this time for a determination of attorney fees owed to Defendant. (ECF No. 297). Before the Court issued a decision on regarding the amount of attorney fees, the parties settled and Plaintiff filed a stipulated dismissal. (ECF No. 305).

On July 11, 2016, Defendant's former counsel, Shumaker, Loop, & Kendrick, LLP ("Shumaker"), moved for an attorney charging lien on Defendant. (ECF No. 299). Shumaker represented Defendant from 2008 until December 16, 2015, when Defendant discharged the firm. (*Id.* at 1–2). Shumaker seeks an equitable charging lien of $639,946.19 against Defendant for unpaid legal services and unreimbursed expenses. (*Id.* at 1). Shumaker alleges that out of the $1,236,803.58 Defendant owed in attorney fees, $614,893.08 remains unpaid. (*Id.* at 2). In addition, Shumaker asserts that out of its $64,744.42 in advanced expenses, $25,053.10 was never reimbursed. (*Id.*). Defendant filed a Response in Opposition, asserting that it adequately compensated Shumaker by paying $700,539.84 in fees and expenses. (ECF No. 300). On September 19, 2017, the Court granted Shumaker's Motion and ordered the imposition of a

$639,946.18 charging lien on any settlement funds paid to Defendant. (ECF No. 306). The $639,946.18 charging lien covered Defendant's unpaid legal fees ($614,893.08) and unreimbursed expenses ($25,053.10). (*Id.*).

On October 19, 2017, Defendant moved for reconsideration of the Court's Order. (ECF No. 307). The Court granted Defendant's motion in part, ordering that Shumaker disclose the invoice and billing information supporting its $639,946.18 request within twenty days. (*Id.*). In addition, the Court granted Defendant's request for an evidentiary hearing. (*Id.*). On June 15, 2018, the Court referred the evidentiary hearing to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). (ECF No. 320). The Magistrate Judge held an evidentiary hearing on October 30, 2019 and October 31, 2019. (ECF Nos. 328 329). Following the hearing, the Magistrate Judge ordered briefing on the proper legal standard to apply to Shumaker's request for attorney fees. Defendant and Shumaker filed briefs on December 4, 2018. (ECF Nos. 332 & 333).

On May 28, 2019, the Magistrate Judge issued a Report and Recommendation recommending that Shumaker's request for attorney fees be granted. The Magistrate Judge further recommended the imposition of a $639,946.18 attorney charging lien on any settlement funds paid to Defendant in this matter. Defendant filed an Objection on June 11, 2019. (ECF No. 335). The matter is now ripe for review.

## II.

Under Ohio common law, attorneys have a right to assert a lien against a judgment they obtain on behalf of their client. *Filius v. Outdoor Sports Headquarters, Inc.*, No. C-3-90-358, 1995 WL 1612532, at *2 (S.D. Ohio May 18, 1995). The Ohio Supreme Court outlined the concept of an attorney charging lien in *Cohen v. Goldberger*, 141 N.E. 656 (1923). As the *Cohen* court explained:

3

> The right of an attorney to payment of fees earned in the prosecution of litigation to judgment, though usually denominated a lien, rests on the equity of such attorney to be paid out of the judgment by him obtained, and is upheld on the theory that his services and skill created the fund.

*Id.* at paragraph one of the syllabus.

Although *Cohen* describes a lien attached to a judgment, courts have not interpreted this language as prohibiting the attachment of a lien to settlement proceeds. *See, e.g., Filins,* 1995 WL 1612532, at *2-3; *Devis v. Pineview Ct. Condo. Ass'n,* 8th Dist. Cuyahoga No. 102147, 2015-Ohio-2704, ¶¶ 5, 11. Nor have Ohio courts interpreted *Cohen's* language as prohibiting the attachment of a lien when an attorney is discharged before the lawsuit is settled (or final judgment is entered in the case). *See, e.g., Filius,* 1995 WL 1612532, at *2; *Cuyahoga Cnty. Bd. of Comm'rs v. Maloof Props., Ltd.,* 197 Ohio App. 3d 712 (Ohio Ct. App. 2012). Additional factors that Ohio courts have considered when deciding whether to impose a charging lien include:

> (1) the right of the client to be heard on the merits; (2) the right of an attorney to invoke the equitable jurisdiction of the courts to protect his fee for services rendered; (3) the elimination of unnecessary and duplicative litigation; (4) the opportunity for the client to obtain counsel to litigate the claim for attorney fees; (5) the propriety of an order as opposed to a judgment; (6) a forum for the presentation of witnesses, if necessary; and (7) the equitable nature of the proceeding.

*Fire Prot. Res., Inc. v. Johnson Fire Prot. Co.,* 594 N.E. 2d 146, 149-50 (Ohio Ct. App. 1991). Ultimately though, the decision to impose an attorney charging lien is based on the facts and circumstances of the particular case and is left to the sound discretion of the court. *Kerger & Hartman, LLC v. Ajami,* 54 N.E.3d 682, 686 (Ohio Ct. App. 2015).

In her Report and Recommendation, the Magistrate Judge analyzed the *Cohen* factors and concluded "the equities in this case still favor the imposition of a lien." (R&R at 7, ECF No. 334). Additionally, the Magistrate Judge declined to recommend "that the Court use the lodestar analysis here, finding the *Cohen* analysis sufficient." (*Id.* at 12). Nevertheless, the Magistrate

4

Judge recommended that, even applying the lodestar analysis, Shumaker's requested fees be found reasonable and awarded. (*Id.* at 12). Defendant contends that the fees sought by Shumaker are inequitable under the *Cohen* framework. (Obj. at 3, ECF No. 335). Furthermore, Defendant "also objects to the [Report and Recommendation] to the extent it based its conclusion solely on *Cohen*." (*Id.*). According to Defendant, the lodestar method described in *Hensley v. Eckerhart*, 461 U.S. 424 (1983) is the appropriate formula for determining the amount of the attorney charging lien. (*Id.*). Applying the lodestar framework, Defendant argues that the Court failed to give proper weight to the testimony of Thomas Shunk ("Mr. Shunk"), a witness who testified on behalf of Defendant at the evidentiary hearing. (*Id.*).

## III.

As noted in the Report and Recommendation, "[t]he Court has already undertaken an analysis of whether Shumaker's request that an attorney charging lien be placed on any settlement funds obtained by [Defendant] satisfies the requirements outlined in *Cohen* and the additional factors analyzed by Ohio courts." (R&R at 5). This prior analysis notwithstanding, the Court begins by conducting a *de novo* review under *Cohen*.

### A. *Cohen* Analysis

Shumaker represented Defendant for approximately seven years. During the course of its representation, Shumaker litigated this case to judgment. In addition to filing a Motion for Summary Judgment, Shumaker: (1) appealed the Court's order on summary judgment to the Federal Circuit, (2) litigated the inequitable conduct issue in a three-day bench trial, (3) and later defended the Court's decision in a second appeal to the Federal Circuit. Moreover, the long, complex, and high-stakes nature of the litigation is evident through witness testimony.

Ronald Christaldi ("Mr. Christaldi"), a partner at Shumaker who personally represented Defendant, testified that "it was really 'bet the company' litigation for [Defendant]." (Tr. Day 1 at 30:13–14, ECF No. 330). In other words, Mr. Christaldi testified that "[i]f Defendant [had] lost the litigation or was forced to stop selling those products, it would have went out of business." (*Id.* at 30:15–16). Mr. Christaldi further testified as follows:

> Q. Did Dr. Laghi [CEO of Defendant] ever tell you that he believed his entire business was at risk in this litigation?
>
> A. Absolute—I mean, it was pervasive. We—[Dr. Laghi] and his team and I met weekly starting in the beginning of 2005 up until the end of the representation, so for about ten years we met weekly for a few hours to dismiss the overall litigation and other pending legal projects.

(*Id.* at 31:16–22). Stephen Chappelear, another witness at the evidentiary hearing, confirmed the importance of the litigation, testifying that: "[a]n adverse result could easily have led to [Defendant] going out of business." (*Id.* at 160:3–5).[1]

Considering the procedural history of the case, as well as the witness testimony, the Court finds that Shumaker's "services and skill created the [judgment] fund." *Cohen*, 141 N.E. at 656. Thus, Shumaker's request is an equitable award under *Cohen*. Furthermore, the balancing factors articulated in *Fire Protection Resources* also weigh in favor of imposing an attorney charging lien. First, Defendant has been heard on the merits numerous times. Not only did Defendant file an Objection to the Magistrate Judge's Report and Recommendation (ECF No. 335), it also filed a Response in Opposition to Shumaker's Motion for an Attorney Charging

---

[1] Defendant argues there is conflicting testimony regarding whether the case was truly a "bet the company" case. (Obj. at 6). Specifically, Defendant cites Mr. Shunk's testimony that "the so called 'bet the company' case that may have been in existence prior to November of 2013 was no longer a 'bet the company case.'" (Tr. Day 2 at 73:18–20, ECF No. 331). However, Mr. Shunk's testimony actually affirms Shumaker's position that the case was—at least at one point—high-stakes litigation for Defendant.

6

Lien (ECF No. 300); submitted a Motion for Reconsideration (ECF No. 307); litigated a two-day evidentiary hearing; and filed a post-hearing brief (ECF No. 333).

Second, although Defendant suggests that Shumaker engaged in unethical conduct by unreasonably "ramping up" its legal fees, the record does not support this assertion. (Obj. at 6). Defendant relies on Dr. Laghi's testimony, which reads as follows:

> Q. Why did you not object to the Shumaker billings?
>
> A. Oh, well, at some point Shumaker's billing went berserk, but Mr. Christaldi several times over the phone and in person assured that the responsibility of those legal fees was [Plaintiff's] and not [Defendant's], and that's the reason we didn't complain formally. Whenever we complained about the high billing, Mr. Christaldi threatened that [his] finances—finance department would force him to stop the work and withhold the files.

(Tr. Day 2 at 24:24–25:8). However, Dr. Laghi testified that he could not provide written evidence of Mr. Christaldi's alleged threats to discontinue the representation and withhold client files. (*Id.* at 26:15–25). In addition, Mr. Christaldi testified that he initially charged Defendant a lower-than-market rate for his services. (*Id.* at 49:9–10). Mr. Christaldi further testified that when he eventually increased the rates to better align with the market, they were still "discounted from prevailing market rates." (*Id.* at 50:1–12).[2]

Perhaps most convincingly, Defendant's own witness, Mr. Shunk, testified to the following:

> Q. And in terms of—if I understand your testimony, please correct me, you are not opining that any of the rates at issue were unreasonable as compared to market rates, are you?
>
> A. I believe, if I understand what you are saying, the answer is yes. I'm not so opining.

---

[2] David Wicklund ("Mr. Wicklund"), a Shumaker attorney, confirmed Mr. Christaldi's testimony regarding courtesy discounts. According to Mr. Wicklund's testimony, Shumaker offered Defendant $98,068.12 in courtesy discounts over the course of the second half of the litigation. (*Id.* at 128:20–129:4).

7

(*Id.* at 89:5–10). Thus, Defendant does not raise sufficient evidence to suggest that Shumaker engaged in inequitable conduct which could call into question the Court's exercise of equitable jurisdiction.

Third, imposing an attorney charging lien could eliminate the potential for duplicative litigation, i.e., a separate lawsuit between Defendant and Shumaker regarding attorney fees. Fourth, Defendant is represented by new counsel. Fifth, neither party objects to the propriety of an order as opposed to a judgment. (*See also* Op. & Or., ECF No. 306). Sixth, the evidentiary hearing served as a forum for Defendant to call three witnesses. Finally, the equitable nature of the proceeding weighs in favor of imposing an attorney charging lien. Although Defendant asserts that a lien would be inequitable, it offers no evidence to support this assertion. Defendant merely attacks Mr. Chappelear's calculation of fees as incorrect, citing "the lack of discovery into the propriety of Shumaker's billing entries." (Obj. at 3).

The Court finds Defendant's argument unpersuasive for several reasons. As noted *supra*, the great weight of the evidence indicates that Shumaker's rates were reasonable. Even when Shumaker increased its rates, Dr. Laghi testified that, to his knowledge, no one questioned the increases. (Tr. Day 2 at 29:21–23). Furthermore, Dr. Laghi testified as to the following:

> Q. To you knowledge, Dr. Laghi, no one from [Defendant] ever complained about the format of a bill or a single time entry, did they?
>
> A. To my knowledge, nobody did.

(*Id.* at 29:17–20). Thus, Dr. Laghi's own testimony undercuts Defendant's assertion that Shumaker engaged in inequitable billing practices.

Accordingly, the Court finds that the factors articulated in *Cohen* and *Fire Protection Resources* support the imposition of the attorney charging lien.

8

### B. Lodestar Analysis

In her well-reasoned opinion, the Magistrate Judge notes that Ohio case law does not support Defendant's assertion that the lodestar method should be used to determine the amount of an attorney charging lien. (R&R at 12). The Magistrate Judge cites *Cuyahoga Cty. Bd. Of Commrs. V. Maloof Properties, Ltd*, in which an Ohio Court of Appeals stated: "[c]ourts have strictly applied the requisites spelled out in the syllabus of *Cohen*" when permitting a charging lien. 968 N.E. 2d 602, 715 (Ohio Ct. App. 2012). *See also Reid, Johnson, Downes, Andrachik & Webster v. Lansberry*, 629 N.E. 2d 431, 436–437 (Ohio 1994) ("[a] trial court called upon to determine the reasonable value of a discharged contingent-fee attorney's services in *quantum meruit* should consider the totality of the circumstances involved in the situation."). Additionally, the Magistrate Judge points out that other states have declined to apply the lodestar analysis when calculating attorney charging liens. (R&R at 11) (citing *Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz*, 652 So. 2d 366, 368–369 (Sup. Ct. Fl. 1995)).

Defendant objects to this view, contending that "the lodestar method described in *Hensley* is the appropriate analysis to undertake to determine the appropriate amount of an attorney[']s lien." (Obj. at 3). Defendant provides no case law to support his contention. Rather, Defendant argues that Mr. Chappelear and Mr. Shunk, i.e., the expert witnesses, premised their conclusions on the lodestar method. (*Id.* at 3–4). Following the Magistrate Judge's example, the Court finds it unnecessary to determine whether the lodestar method should be employed to calculate attorney charging liens. Even applying the lodestar analysis, Shumaker's $639,946.18 charging lien should be upheld as reasonable.

"The starting point for determining the amount of reasonable attorney fees is the 'lodestar amount' which is calculated by multiplying the number of hours reasonably expended on the

9

litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods. Inc.*, 515 F.3d 531, 551–552 (6th Cir. 2008) (citing *Hensley*, 461 U.S. at 433)). Courts in this Circuit utilize the "prevailing market rate in the relevant community" when determining the reasonable hourly rate. *Smith v. Serv. Master Corp.*, 592 F. App'x 353, 369 (6th Cir. 2014). The sum of the reasonable attorney fees may be adjusted to reflect relevant factors, such as the "results obtained" in the litigation. *Hensley*, 461 U.S. at 434 (quoting *Johnson v. Georgia Highway Express, Inc.*, 488 F. 2d 714, 717–719 (5th Cir. 1974)). Moreover, "[d]etermining a reasonable attorney's fee is a matter that is committed to the sound discretion of a trial judge." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010) (internal citations omitted).

In its Response in Opposition to Shumaker's original motion, Defendant initially concluded that Shumaker is properly entitled to $375,840.55 in attorney fees under the lodestar method. (Opp'n at 5, ECF No. 333). Defendant premised this figure on the opinion of Dr. Shunk, who testified: "the revised amount I came up with for the charges in question from a lodestar analysis perspective was $375,840.55." (Tr. Day 2 at 71:16–18). Defendant went on to reduce the amount to $300,000, relying on Mr. Shunk's application of the *Johnson* factors. (Opp'n at 5). The Magistrate Judge rejected this reduction, pointing out that: (1) *Johnson* is not binding on the Court, and (2) Mr. Shunk's opinion should be awarded little weight because he has no experience as an expert and he "arbitrarily reduc[ed] certain hours worked by Mr. Christaldi and Mr. Wicklund." (R&R at 13). Instead, the Magistrate Judge relied on Mr. Chappelear's opinion, who testified that Shumaker's requested fees were reasonable.[3]

---

[3] Mr. Chappelear testified that "[m]y opinion is that the fees at issue in this case for approximately a two-year period were reasonable and that the services that were rendered by the Shumaker Loop firm to [Defendant], that resulted in those fees were also reasonable and necessary." (Tr. Day 1 at 151).

10

This Court agrees with the Magistrate Judge. Although Defendant contends that "Mr. Shunk's report did not 'arbitrarily reduce hours,'" Mr. Shunk testified that he "revised the hours [worked] to a number of hours I though was more reasonable." (Tr. Day 2 at 51:22–23). Mr. Shunk justified these hour reductions by stating he "had an issue with charges that were in excess of eight hours." (*Id.* at 69:1–3). The Court finds this approach arbitrary. As Defendant accurately notes, a district court may exclude hours that were not "reasonably expended." *Cleveland Area Bd. of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1020 (N.D. Ohio 1997). Yet such an adjustment is left to the discretion of the district court. *See Hensley*, 461 U.S. at 433 ("[w]here the documentation of hours is inadequate, the district court *may* reduce the award accordingly") (emphasis added). Here, Defendant testified he had no authority to support the proposition that working beyond eight hours a day is unreasonable. (Tr. Day 2 97:14–17). Moreover, Mr. Shunk's opinion that a work description of "attend trial" is too generic to explain a nine-plus hour day is not well taken. It is not unreasonable for lawyers to work more than eight hours per day—particularly in the midst of a complex trial.

Mr. Shunk also testified that he "made certain changes to the hourly rates." (*Id.* at 51:24–25). Particularly, Mr. Shunk testified that he revised the rate increases in November 2013 because: (1) they were made in the middle of the year, i.e., not January 1st, and (2) "they were roughly $100-an-hour rate increases, which I think are strikingly unusual." (*Id.* at 59:10–17). However, Mr. Shunk testified that he didn't "necessarily disbelieve" Shumaker's explanation that the rate increases "had to do with bringing the fees more in line with standard [attorney] fees at the time." (*Id.* at 59:18–25). Furthermore, as the Magistrate Judge pointed out, Mr. Shunk provided no explanation for why he found middle-of-the-year or $100-an-hour rate increases to be unreasonable. Given the arbitrary nature of Mr. Shunk's rate revisions, as well as his

11

inexperience at giving expert testimony, the Magistrate Judge properly afforded Mr. Shunk's testimony less weight than that of Mr. Chappelear.

Turning to Mr. Chappelear's testimony, the Court finds Shumaker's requested fees are reasonable. Mr. Chappelear has offered expert testimony on attorney fees for more than twenty years, lending significant credibility to his statement. (Tr. Day 1 at 150:8–13). Regarding Shumaker's time charges, Mr. Chappelear testified:

> Q. In your experience, is it unusual for a lawyer in a complex case, particularly in connection with preparing for or attending trial, to work and bill more than eight hours in one day?
>
> A. No. That's not unusual at all. Here, one of the invoices reflected a time charge of Mr. Wicklund for 14 hours. That was a day when he flew from Toledo, Ohio, to Florida, had a meeting with other lawyers working on the case—this is in the month proceeding trial—and returned to Toledo the same day. That was an entire day spent devoted to the interests of [Defendant], and that was a 14-hour charge.

(*Id.* at 157:22–158:7).

In Mr. Chappelear's words: "I would be shocked to see someone only charging eight hours during a trial day." (*Id.* at 158:11–13). Moreover, after reviewing "various cases and surveys," Mr. Chappelear testified "that the hourly rates that were charged by [Shumaker's] timekeepers [were] reasonable for this locale." (*Id.* at 155:13–156:2). Mr. Chappelear also testified that it is customary for law firms to adjust their rates over time. (*Id.* at 156:3–5). Finally, to Mr. Chappelear's knowledge, Defendant never issued a complaint as to "either the hourly rate[s] themselves or to any increases in hourly rates." (*Id.* at 157:2–8).

In sum, the Court concludes the weight of the evidence supports Shumaker's position. Given Mr. Chappelear's testimony indicating the reasonableness of Shumaker's requested fees; Shumaker's generous discounts to Defendant; Mr. Shunk's arbitrary reductions; and the high-

stakes nature of Shumaker's representation, the Court holds that Shumaker's $639,946.18 charging lien is reasonable under lodestar.

## C. Remaining Objections

Defendant asserts two additional arguments in his Objection. First, Defendant avers that the amount of the attorney charging lien should be reduced from $639,946.18 to $632,135.13. (See Obj. at 9). Defendant premises its argument on the calculations of Mr. Wicklund, who testified:

> Q. And do you understand that that [disputed] number is about $607,000, not counting the expenses that we're not disputing?
>
> A. That's my understanding.

(*Id.* at 179:20–22). Defendant also cites Mr. Varner, counsel for Shumaker, who stated on the record: "the amount of the lien is actually $632,135.13, and includes $25,000 in costs also." (*Id.* at 21:13–15). Defendant's position is not well taken. While Mr. Wicklund may have calculated a slightly reduced lien, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Because Shumaker originally moved for a lien of $639,946.18; the Court originally granted a lien of $639,946.18; and Defendant provides no explanation or expert witness testimony to support a minor reduction; the Court overrules Defendant's objection.

Second, Defendant argues that any amount awarded via the attorney charging lien should be retained in the Court's registry pending the resolution of Defendant's malpractice suit against Shumaker. (Obj. at 10). Defendant cites *Exact Software v. Infocon Systems, Inc.*, in which the Northern District of Ohio held that lawyer misconduct "can reduce or eliminate the fee that the lawyer may reasonably charge." No. 3:03-CV-7183, 2011 WL 2490594, at *6 (N.D. Ohio June 22, 2011). The Court overrules Defendant's objection. Defendant has pending malpractice

13

claims in both Florida and Ohio. As represented by Defendant, the only trial scheduled in either case is set for January 2020 in Florida. (Obj. at 10 n.5). The Court has now analyzed and affirmed the reasonableness of Shumaker's requested attorney charging lien several times. Because Defendant has provided this Court with no indicia that Shumaker engaged in inequitable conduct, the Court sees no reason to delay the imposition of Shumaker's attorney charging lien for an additional year and a half.

## IV.

For the foregoing reasons, the Court **ADOPTS** the Report and Recommendation (ECF No. 334) and **DISMISSES** Plaintiff's Objection (ECF No. 335). Shumaker's requested attorney charging lien is reasonable. The Court **DIRECTS** the Clerk to impose a $639,946.18 attorney charging lien on any settlement funds granted to Defendant in this action.

**IT IS SO ORDERED.**

6-20-2019
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**